# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RONALD MESHELL,

    Petitioner,

v.                                          Case No. 06-CV-15296

DOUGLAS VASBINDER,

    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
## AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Ronald Meshell has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Cotton Correctional Facility in Jackson, Michigan. He challenges his convictions for manufacturing methamphetamine, possession of methamphetamine, operating or maintaining a methamphetamine laboratory near a residence, and possession of chemical or laboratory equipment to manufacture methamphetamine near a residence. The court will, for the following reasons, deny the petition.

## I. BACKGROUND

Petitioner's convictions arise from a raid at a detached garage on the property of Margaret Anthony's rented home located at 3214 South Grand Traverse, Flint, Michigan on March 14, 2003. The Michigan Court of Appeals summarized the facts leading to Petitioner's convictions as follows:

> After arriving at the residence, Officer Brian Warden and Trooper Ryan Pennell walked toward the back of the property. Warden and Pennell heard "a commotion" or "a noise" in the detached garage. Defendant

pushed the garage door open from the inside and walked out.  After defendant saw the officers, he removed his gloves and threw them on the ground.

While defendant was in the garage, the methamphetamine was in the process of being manufactured; it was cooking or "off-gassing." Lieutenant Richard Aro testified that, when he arrived, the methamphetamine had not been cooking for a very long time.  Aro explained that the methamphetamine production was in the beginning of the middle manufacturing stage when the police arrived.  Inside the garage, the police found everything required for the first two stages of manufacturing methamphetamine.  Defendant was the only person in the area of the garage.

The resident, Margaret Anthony [ ], testified that she had never used the garage because there was "too much junk" inside.  She explained that her son, Matthew, used the garage "just to put garbage bags that were garbage like food, toilet paper, trash."  However, Matthew was not home when the police arrived.  Margaret last saw Matthew "a couple days' before the police arrived to search the garage.  Margaret testified that she never gave anyone permission to use the garage.  She explained that she did not know defendant and had never seen him before.

Defendant and Sandra Schneider, defendant's fiancé, both testified that Margaret knew defendant and that defendant was in the garage to pick up a desk.  Defendant testified that he does not know how to manufacture methamphetamine.

*People v. Meshell*, 696 N.W.2d 754, 758-59 (Mich. Ct. App. 2005) (footnote omitted).

## II.  BACKGROUND

Following a jury trial in Genesee County Circuit Court, Petitioner was convicted of manufacturing methamphetamine, possession of methamphetamine, operating or maintaining a methamphetamine laboratory near a residence, operating or maintaining a methamphetamine laboratory, and possession of chemical or laboratory equipment to manufacture methamphetamine near a residence.  On September 22, 2003, he was sentenced as a fourth habitual offender to 12-30 years for the manufacturing methamphetamine conviction, 10-30 years for the possession of methamphetamine

2

conviction, 12-30 years for the operating a methamphetamine laboratory near a residence conviction, 10-30 years for the operating a methamphetamine laboratory conviction, and 10-30 years for the possession of chemical or laboratory equipment to manufacture methamphetamine conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising the following claims:

   I.   The prosecution presented insufficient evidence to support defendant-appellant's convictions.

   II.  Defendant-appellant's convictions on Counts 3 and 4 violate double jeopardy.

   III. The trial court abused its discretion in allowing the prosecution to impeach defendant-appellant with evidence of a 1983 burglary conviction under M.R.E. 609.

   IV.  Defendant-appellant is entitled to have credit for time served before sentencing applied to his sentences, even though he was on parole from a sentence imposed in another state when these offenses were committed.

The Michigan Court of Appeals held that Petitioner's convictions for operating or maintaining a methamphetamine laboratory near a residence and operating or maintaining a methamphetamine laboratory violated the Double Jeopardy Clause and vacated the conviction for operating or maintaining a methamphetamine laboratory. The state court affirmed the remaining convictions and sentences. *People v. Meshell*, 696 N.W.2d 754 (Mich. Ct. App. 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals (including the double jeopardy claim on which he was granted relief). The Michigan Supreme Court denied leave to appeal. *People v. Meshell*, No. 128771 (Mich. Nov. 29, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims raised on direct appeal, except that he amended his double jeopardy claim to include an argument that all of his convictions should have been vacated based upon the double jeopardy violation.

### III. STANDARD

Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment

4

that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 410-11. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004).

Further, where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 943. However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

### IV.  ANALYSIS

#### A.  Sufficiency of the Evidence

Petitioner claims that insufficient evidence was presented to sustain any of his convictions.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

5

which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970).  The critical inquiry on review of the sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted).  This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.  Pursuant to 28 U.S.C. § 2254(d)(1), this court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent.

Although the Michigan Court of Appeals did not specifically cite *Jackson*, the court cited case law which plainly incorporated the *Jackson* standard and held that sufficient evidence was presented to sustain Petitioner's convictions.  First, the court held that sufficient evidence was presented to support the manufacturing methamphetamine conviction.  The elements of manufacturing methamphetamine are: "(1) the defendant manufactured a controlled substance, (2) the substance manufactured was methamphetamine, and (3) the defendant knew he was manufacturing methamphetamine." *Meshell*, 696 N.W.2d at 758.  The court noted that the substance inside the reactionary vessels tested positive for methamphetamine.  In addition, the court determined that sufficient evidence was presented to prove that Petitioner manufactured the substance and did so knowingly.  When officers arrived on

6

the scene of the lab, Petitioner exited the lab wearing gloves which he quickly discarded upon seeing the officers. At the time police arrived, the methamphetamine was determined to be at the beginning of the middle manufacturing stage. Petitioner was the only person in the area of the lab. Considering this testimony in a light most favorable to the prosecution, the court of appeals determined that a jury reasonably could conclude that Petitioner manufactured the methamphetamine.

Next, the state court considered the offense of possession of methamphetamine. Under Michigan law, "[p]roof of possession of a controlled substance requires a showing of dominion or right of control over the drug with knowledge of its presence and character." *Meshell*, 696 N.W.2d at 759 (internal quotation omitted). Mere presence is insufficient to establish possession. *Id.* In addition, "[p]ossession my be proved by circumstantial evidence and reasonable inferences drawn from this evidence." *Id.* (internal quotation omitted). The state court held that evidence was presented "to indicate a sufficient nexus between defendant and the methamphetamine." *Id.* The court considered the following evidence in reaching this conclusion: Petitioner was alone in the garage while the methamphetamine was cooking or "off-gassing." The "off-gassing" process emits significant steam and smoke and a strong odor such that a person could not be unaware of the process.

The state court also held that sufficient evidence was presented to sustain Petitioner's conviction of operating or maintaining a methamphetamine laboratory within five hundred feet of a residence. This offense consists of the following elements: (1) the defendant used a building or structure, (2) the defendant knew or had reason to know that the building or structure was to be used as a location for manufacturing

7

methamphetamine; and (3) the building or structure was within five hundred feet of a residence. *Meshell*, 696 N.W.2d at 760. The state court held that a jury reasonably could conclude that Petitioner used the garage given the testimony that he exited the garage when police arrived, was the only person in the garage, and was in the garage while the methamphetamine was cooking. Second, the state court held that the second element was satisfied because significant evidence was presented that Petitioner was the only person present while the methamphetamine was cooking, and the cooking process emitted a strong odor, smoke and steam. Finally, testimony was presented that the garage was approximately twenty-two feet from the nearest residence.

Lastly, the state court considered Petitioner's claim of insufficient evidence regarding his conviction for possession of chemical or laboratory equipment to manufacture methamphetamine. The state court considered the testimony of Sergeant Daniel Kind, methamphetamine coordinator, who detailed the equipment found inside the garage, all of which he connected to the manufacture of methamphetamine. Considering this testimony, and the previously discussed testimony regarding Petitioner's presence in the lab during the cooking process, the state court held that sufficient evidence was presented to sustain this conviction.

Petitioner has not presented any evidence to show that the state court's findings of fact were erroneous. Therefore, according the state court's findings of fact a presumption of correctness, this court concludes that the Michigan Court of Appeals' well-reasoned decision that a rational trier of fact could have found the elements of each of these crimes were proven beyond a reasonable doubt did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as

8

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to his sufficiency of the evidence claim.

## B. Double Jeopardy

Petitioner claims that his convictions for manufacturing methamphetamine, operating or maintaining a methamphetamine laboratory, possession of methamphetamine, and possession of chemical or laboratory equipment to manufacture methamphetamine near a specific place violate the Double Jeopardy Clause because they punish the same acts.

Respondent argues that the double jeopardy claim is not exhausted because, while Petitioner raised a double jeopardy claim on direct review, that claim was limited to his convictions for operating or maintaining a methamphetamine laboratory and operating or maintaining a methamphetamine laboratory near a residence. The claim raised in state court did not encompass all of Petitioner's offenses as the claim raised in his habeas petition does.

A petitioner must exhaust his state court remedies prior to seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. §§ 2254(b)(1)(A) & 2254(c). A petitioner "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Tornik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus

relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *Dombkowski v. Johnson*, 488 F.2d 68, 70 (6th Cir. 1973).

Petitioner failed to present this double jeopardy claim in the Michigan state courts. Therefore, this claim is unexhausted. A federal court may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims. 28 U.S.C. § 2254(b)(2); *see also Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991), *cert. denied*, 503 U.S. 922 (1992) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court). For the reasons set forth below, the court has concluded that Petitioner's claim does not warrant habeas corpus relief. Accordingly, in the interests of efficiency and justice, the court will address Petitioner's double jeopardy claim rather than dismiss the petition on the ground of failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); *Cain*, 947 F.2d at 819 (holding that where an unexhausted federal constitutional claim is plainly meritless, "it would be a waste of time and judicial resources to require exhaustion").

The Double Jeopardy Clause "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *U.S. v. Dinitz*, 424 U.S. 600, 605 (1976). In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court articulated the general test, the "same elements" test, used to determine whether a double jeopardy violation has occurred. Under the same elements test, a court examines whether each offense contains an element not contained in the other. If "every violation of one statute entails a violation of the other," a defendant will be considered to be placed in double jeopardy. *United States v. Benton*, 852 F.2d 1456, 1465 (6th Cir. 1988) (internal quotation and citation omitted). "'A single act may

be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'" *Id.* (*quoting Blockburger v. United States*, 284 U.S. 299, 304 (1932)). However, the Supreme Court held in *Missouri v. Hunter*, 459 U.S. 359, 368 (1982), that where "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek, and the trial court or jury may impose, cumulative punishment under such statutes in a single trial." *Id.* at 368.

The elements of manufacturing methamphetamine are "(1) the defendant manufactured a controlled substance, (2) the substance manufactured was methamphetamine, and (3) the defendant knew he was manufacturing methamphetamine." *Meshell*, 696 N.W.2d at 758. The elements of operating or maintaining a methamphetamine laboratory near a specified place are: (1) possession of a vehicle, building, location, chemical, or equipment with (2) the knowledge that they will be used to manufacture methamphetamine, (3) within 500 feet of a residence, business, school, or church. Mich. Comp. Laws § 333.7401c(2)(d).

The elements of possession of methamphetamine are: (1) possession of a controlled substance; (2) that the controlled substance was methamphetamine; and (3) that the defendant knew he was in possession of methamphetamine. Mich. Comp. Laws § 333. 7403(2)(b)(i). The prosecution must show that the defendant had the specific intent to possess methamphetamine. Finally, for the offense of possession of

11

chemical or laboratory equipment to manufacture methamphetamine near a specified place, a prosecutor must prove: (1) defendant possessed chemical or laboratory equipment; and (2) defendant knew or had reason to know that the chemical or laboratory equipment was to be used for the purpose of manufacturing methamphetamine. Mich. Comp. Laws § 333.7401c(2)(d).

Because each of these offenses requires proof of an element that the others do not, Petitioner's convictions for these offenses do not violated the constitutional prohibition against multiple punishments under the Double Jeopardy Clause of the Fifth Amendment.

### C. Admission of Other Act Evidence

In his third habeas claim, Petitioner argues that the trial court violated his constitutional right to due process and a fair trial when the prosecution was permitted to impeach him with evidence of a twenty-year old burglary conviction.

"Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994), *citing Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985). Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003). The United States Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United*

12

*States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. Therefore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513. Petitioner's challenge to the admission of the prior conviction, therefore, does not warrant habeas relief.

### D. Credit for Time Served

Finally, Petitioner argues that he is entitled to sentencing credit against these convictions for time served in jail while awaiting trial.

A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only. *See Howard v. White*, 76 Fed. App'x 52, 53 (6th Cir.2003). It is well-settled that state law issues are not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Moreover, under Michigan law, when a parolee is arrested for a new criminal offense, he is held on a parole detainer until he is convicted of that offense and is not entitled to credit for time served in jail on the sentence for the new offense. *See* Mich. Comp. Laws Ann. § 791.238(2); *People v. Stewart*, 203 Mich. App. 432, 433 (1994). This is so even when the defendant is on parole from a foreign jurisdiction. *People v. Seiders*, 262 Mich. App. 702, 705 (Mich. Ct. App. 2004). Petitioner admits that he was on parole supervision from crimes committed in Missouri when he committed the offenses at issues in this case. See 12/3/02 Tr. at 6. Accordingly, the trial court's failure to credit Petitioner's

sentence was in keeping with Michigan law. *See Gora v. Romanowski*, 2005 WL 3465725, *2 (E.D. Mich. Dec. 16, 2005).

The court therefore concludes that Petitioner is not entitled to habeas relief on this claim.

## V. CERTIFICATE OF APPEALABILITY

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 901-02 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.) (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any

claims upon which habeas relief may be granted. Therefore, the court will deny a certificate of appealability.

## VI. CONCLUSION

IT IS ORDERED that the petition for writ of habeas corpus" [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: August 29, 2008

I hereby certify that a copy of the foregoing document was mailed to Ronald Meshell and counsel of record on this date, August 29, 2008, by electronic and/or ordinary mail.


      S/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522